LEWIS HARDY v. FRED DOUG CRAWFORD; JOHN WESLEY CRAWFORD; MICK CRAWFORD; JESSIE BLYE AND WIFE, LOUISE BLYE; HOUSTON BLYE; RUBY BLYE SMITH AND HUSBAND, GEORGE SMITH; LILLIAN BLYE; ATHEL BOWMAN; AND THE HEIRS AT LAW OF SAM BOWMAN

No. 8225SC757

(Filed 21 June 1983)

**Boundaries § 15; Trespass to Try Title § 4— boundary dispute—invalidity of prior consent judgment**

> A 1916 consent judgment entered in an action between the predecessors in title of plaintiffs and defendants was void and incapable of supporting a defense of *res judicata* as to the ownership of disputed land where (1) the language of the judgment indicated that a map was an integral part of the judgment and essential to its completion, and the map was not found with the judgment or otherwise produced, and (2) the metes and bounds description in the judgment was indefinite in that it used the word "about" six times when referring to the call distances and it varied from existing property lines and lacked considerable distance in closing.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 22 March 1982 in Superior Court, BURKE County. Heard in the Court of Appeals 16 May 1983.

This civil action involves an ownership dispute concerning certain real property in Burke County, North Carolina. Plaintiffs claim ownership as the heirs-at-law of John Hardy who took fee simple title to the land by warranty deed, which deed was recorded in 1908. Defendants claim ownership under a 1916 Consent Judgment involving as parties defendants' predecessors in title and John Hardy. The Judgment purported to award ownership of certain land to defendants' predecessors in title, a portion of which [hereinafter referred to as disputed land] is that claimed by plaintiffs under their deed.

Plaintiffs initiated legal proceedings in this matter by obtaining a Temporary Restraining Order on 4 September 1980. The Order restrained defendants from trespassing on the disputed

land and from cutting timber thereon. Plaintiffs filed a Complaint with their Application for Temporary Restraining Order seeking to permanently enjoin defendants from trespassing or cutting timber on the disputed land. In addition, the Complaint sought monetary recovery for damages resulting from the alleged trespass.

Prior to the initiation of these legal proceedings, on 6 May 1980, F. D. Crawford, one of the defendant-appellants, executed a Quitclaim Deed to his son, J. W. Crawford, also a defendant-appellant, conveying his interest in the disputed land. On 28 August 1980 J. W. Crawford executed a Timber Deed to Danny Hudgins, conveying to him certain rights in the timber on the disputed land. It was Hudgins' entry onto the land and timber-cutting activity that plaintiffs sought to enjoin in their Complaint. Accordingly, plaintiffs amended their Complaint to reflect these additional facts. In the Complaint as amended, plaintiffs named Hudgins and Richard Beyer, trustee for J. W. Crawford, as additional defendants. Plaintiffs also asked that the 6 May 1980 Quitclaim Deed and the 28 August 1980 Timber Deed be declared null and void.

Defendant Hudgins answered on 27 May 1981 admitting his entry onto and timber cutting on the disputed land but denying trespass or liability for any damages on the grounds that his action was pursuant to the Timber Deed. Defendant Hudgins prayed the court to declare the Timber Deed null and void and to direct defendant Beyer to return to him the money paid for the timber rights.

The defendants, except defendant Hudgins, answered on 16 March 1982 denying plaintiffs' ownership of the disputed land. Defendants asked that the Temporary Restraining Order be lifted and that the question of ownership be determined by a jury.

This matter was tried on 27 March 1982. At the request of counsel for plaintiffs and defendants the matter was tried before the court without a jury. After making findings of fact and conclusions of law, the court entered a judgment, the pertinent portions of which are summarized as follows: (1) Plaintiffs are owners of marketable record title in the disputed land; (2) defendants are permanently enjoined from trespassing or cutting timber on the disputed land; and (3) the Quitclaim Deed of 6 May 1980 and the

Timber Deed of 28 August 1980 conveyed no interest in the property described therein. From this judgment, defendants appealed.

*Byrd, Byrd, Ervin, Blanton, Whisnant and McMahon, by John W. Ervin, Jr., for plaintiff-appellees.*

*Simpson, Aycock, Beyer and Simpson, by Richard W. Beyer, for defendant-appellants.*

HILL, Judge.

Plaintiff's claim to the disputed land is based on a warranty deed executed on 21 December 1907 and recorded in the office of the Burke County Register of Deeds on 25 July 1908. The deed conveys fee simple title in a parcel of land "containing thirty acres more or less" to John Hardy and his heirs and assigns. A survey conducted in 1980 showed the actual area to be 50.83 acres. Plaintiffs here are the heirs-at-law of John Hardy.

Defendants' claim to the disputed land arises from a Consent Judgment entered in December of 1916 in Burke County Superior Court. Parties to the Judgment included defendants' predecessors in title as plaintiffs and John Hardy as one of the defendants. The 1916 Judgment recites a metes and bounds description of property that includes a significant portion, approximately 28 acres, of the lands claimed by plaintiffs under the 1907 deed. In addition to the metes and bounds description, the Judgment also makes reference to a map showing the land to which the plaintiffs, defendants' predecessors in title, were entitled under the Judgment. However, there was no map accompanying the written Judgment or otherwise found which purported to be a map of the written description in the Judgment.

Plaintiffs' evidence consisted of the 1907 deed to John Hardy and the deeds to tracts surrounding the disputed land which tended to establish the boundaries thereof. Plaintiffs had the land described in their deed surveyed. From the survey and the deeds to the surrounding land, a composite map of the area was prepared which showed the boundaries established by the metes and bounds descriptions in the deeds. This map and the testimony of the surveyor who prepared it were part of plaintiffs' evidence. Plaintiffs' other evidence tended to show that plaintiffs and John Hardy had paid taxes on the disputed land, that they had put the

land to the uses to which it was susceptible, and that the general reputation of the land placed ownership in plaintiffs. Plaintiffs' evidence also included testimony and documents showing that John Hardy had initiated legal proceedings to enjoin defendants from cutting timber on the land in 1950.

Defendants' evidence consisted of the 1916 Consent Judgment and a mapped plot of the metes and bounds recited therein. Testimony from one witness indicated that a survey had been done and a map prepared pursuant to the 1916 Judgment. Other evidence for defendants included testimony regarding the extent of plaintiffs' use of the disputed land and a map showing the plot of the Consent Judgment overlaying the composite map of the disputed land and surrounding tracts prepared by plaintiffs.

On the basis of the evidence, the trial court made findings of fact which are summarized as follows:

— That plaintiffs claim title to the disputed land as the heirs-at-law of John Hardy, to whom fee simple title was conveyed by warranty deed recorded 25 July 1908 in the office of the Burke County Register of Deeds.

— That John Hardy and plaintiffs have had possession of and exercised dominion and control over the disputed land for more than sixty years.

— That the grantors of the 6 May 1980 Quitclaim Deed and the 28 August 1980 Timber Deed possessed no ownership interest in the disputed land and that the grantees of the deeds acquired no interest thereby.

— That the 1916 Consent Judgment involving the predecessors in title of plaintiffs and defendants was incomplete in that no map was ever filed in accordance with the Judgment and that the metes and bounds description was so indefinite that no boundary lines could be ascertained.

Based on these findings, the trial court made the following pertinent conclusions of law (summarized):

— The purported Consent Judgment entered in the 1916 Term of Superior Court, Burke County is void for the reason that it is both incomplete and indefinite and therefore cannot sustain a defense of *res judicata.*

—No interest in the disputed land or the timber thereon was conveyed by either the Quitclaim Deed of 6 May 1980 or the Timber Deed of 28 August 1980 and neither of the grantors in those Deeds possessed any interest in the disputed land or the timber thereon.

Defendants excepted to the trial court's findings of fact and conclusions of law. On appeal, defendants makes several assignments of error which, though variously worded, challenge the sufficiency of the evidence to support the findings of fact and the sufficiency of the findings to support the conclusions drawn therefrom.

Defendants' first argument is twofold. Defendants contend that the 1916 Consent Judgment is complete and definite and resolves the question of the ownership of the disputed land as to all parties in the present action. Based on this contention, defendants argue that the 1916 Judgment is valid and should operate as *res judicata* in the present dispute. Whether defendants' argument has any merit obviously depends on the validity of the 1916 Judgment.

The law in North Carolina is that a judgment is a conclusion of law based upon facts that have been admitted or established. *Eborn v. Ellis*, 225 N.C. 386, 35 S.E. 2d 238 (1945). Without established facts, the court cannot make a decision on the merits of the case. *Id.* A final judgment is one which decides the case upon its merits without need of further direction of the court. *Veazey v. Durham*, 231 N.C. 357, 57 S.E. 2d 377, *reh. denied,* 232 N.C. 744, 59 S.E. 2d 429 (1950). A final judgment, rendered on the merits by a court of competent jurisdiction is conclusive or *res judicata* of the rights, questions, or facts in issue, as to the parties and those in privity with them, in all other actions involving the same matter. *Masters v. Dunstan,* 256 N.C. 520, 124 S.E. 2d 574 (1962); *Gunter v. Winders,* 253 N.C. 782, 117 S.E. 2d 787 (1960).

In the case before us, the 1916 Consent Judgment relied on by defendants makes two references to the missing map. In both references, the map is said to be "filed with and as a part of this judgment." This language clearly indicates that the map was meant to be more than, as defendants put it, "a superfluous aid in locating the property." Rather, this language indicates that the map is an integral part of the Judgment and essential to its com-

pletion. The fact that the map was not found with or attached to the Judgment, or otherwise produced, removes from the Judgment the necessary element of established facts to support the conclusions of law reached. Without this element, the Judgment cannot be said to be a decision on the merits of the case. Therefore, the 1916 Judgment is not a final judgment and cannot, in this dispute, support defendants' defense of *res judicata* as to the question of the ownership of the disputed land.

That the Judgment is also indefinite is borne out by evidence in the record, including the Judgment itself. The metes and bounds description in the Judgment uses the word "about" six times when referring to the call distances. As Judge Hairston pointed out in his concluding statement, "The description that was given is not in language normally used by surveyors." Testimony from the surveyor witness as well as defendants' own exhibits show that, although several of the calls in the Judgment are consistent with existing property lines, the metes and bounds description varies considerably from existing property lines and lacks considerable distance in closing. Such indefiniteness is fatally defective in situations involving the *res judicata* effect of judgments in later boundary disputes. With regard to such situations, our Supreme Court has said "[T]he verdict and judgment should establish the line with such definiteness that it can be run in accordance therewith. 'Otherwise, the judgment would not sustain a plea of *res judicata* in a subsequent suit between the same parties involving the same subject matter, . . . .'" *Goodwin v. Greene*, 237 N.C. 244 at 249, 74 S.E. 2d 630 at 633 (1953), *quoting Cody v. England*, 216 N.C. 604 at 609, 5 S.E. 2d 833 at 836 (1939).

The trial court's findings of fact that the 1916 Consent Judgment is incomplete and indefinite are amply supported by the record evidence. Indeed, it is difficult to see how the evidence could support contrary findings. The conclusion of law that the judgment was therefore void and incapable of supporting a defense of *res judicata* is legally mandated by the findings and properly drawn therefrom. Defendants' assignments of error in this regard are therefore without merit.

Our conclusion that the 1916 Consent Judgment is void renders defendants' remaining assignments of error and arguments moot and we will not consider them.

The judgment appealed from is

Affirmed.

Chief Judge VAUGHN and Judge BECTON concur.